HIRAM DAMHOFF, Appellant, v. JOHN SHAMBAUGH et al.,
Appellees.

**TRUSTS: Rights of Creditors—Nonalienable Interest.** No present
alienable interest which can be made subject to a lien by the credi-
tor of a *cestui que trust* son passes to the son under a testamentary
trust which is created for the express purpose of maintaining, sup-
porting, and educating testator's *son, wife, and family*, with proviso
(1) that the income of the trust fund shall be paid periodically to
the wife of said son, and (2) that the corpus of the trust shall be
paid, at a named future date, to both the son and wife, with direc-
tion, in substance, for the son and wife thereafter to continue the
trust for the benefit of any of their then surviving children.

Headnote 1:   39 Cyc. p. 238.

*Appeal from Clinton District Court.*—A. P. BARKER, Judge.

DECEMBER 15, 1925.

SUIT in equity by a judgment-creditor against the executor
and trustee of an estate, whereby it is sought to impress the
judgment as a lien upon the alleged interest of the judgment-
debtor, as a beneficiary of the trust estate. The facts involved
were pleaded in the answer as a defense. A demurrer to such
answer was overruled, and upon plaintiff's election, judgment
was entered against him, and he appeals.—*Affirmed.*

*A. M. Blodgett* and *E. L. Miller,* for appellant.

*F. W. Ellis* and *J. E. Purcell,* for appellees.

EVANS, J.—The judgment-debtor is John Shambaugh. The
question presented is whether he has a present alienable interest
in certain property devised in trust to the defendant Peoples
Trust & Savings Bank by the will of Samuel R. Shambaugh, the
deceased father of John. The testator devised one third of his
property to his wife, who survived him. Five sixths of the re-
mainder was devised to his five children other than his son John.
No devise or bequest was made in terms to the son John. The

one-sixth residue of the estate was devised to the Peoples Trust & Saving Bank in trust for the benefit of certain specified beneficiaries, viz., the family of John, including himself. Such devise was contained in Paragraph 4 of the will, which was as follows:

"4th. I hereby give, devise, and bequeath one sixth of the property, real, personal, or mixed, I may die seized or possessed of or to which I may be entitled at the time of my death, to Peoples Trust & Savings Bank, located at Clinton, Iowa, in trust, however, for the following purposes, to wit: Said bank is from time to time to invest and reinvest any property, securities, or money that may come into its hands as such trustee, for the use and benefit of the family of my son, John Shambaugh, a resident of the city of Chicago, and state of Illinois, the income from said fund to be paid on the direction of Maude Shambaugh, wife of said John Shambaugh, to herself or to any of her children or to my said son, but it is my desire that no payments be made unless a receipt therefor is given by said Maude Shambaugh, the income from said fund to be paid in such installments as may be most convenient, but at intervals not greater than once every six months, the said income so obtained to be used for the support of the family of my said son, John, and for the education and maintenance of any child or children of the said John Shambaugh and Maude Shambaugh. It is my will and desire that said trust funds be held intact until the eldest son of my son John is twenty-one years of age, which will occur on the 14th day of November, 1933. In case such eldest son does not live to be twenty-one years of age, it is my wish and desire that said trust fund be continued intact until November 14, 1933, the income therefrom to be paid as hereinbefore directed, for the maintenance and support of the family of my said son, John. It is my will and desire that on the 14th day of November, 1933, any property belonging to said trust then in the hands of the trustee, be delivered to my said son, John, and to his wife, and it is my wish that they be admonished at that time to carefully conserve the property then intrusted to them for the benefit of their child or children, if any of them be then living."

It is the contention of appellant that, under the terms of the foregoing, the son John acquires a vested right of reversion in one half of the trust estate on November 14, 1933, and that

such vested right is now alienable, and should be subjected to the payment of plaintiff's judgment. If that be so, then the testator failed to accomplish a purpose which is made very manifest by the terms of his will. If the plaintiff is entitled to the relief prayed, it will necessarily interfere with the administration of the trust by the trustee, in accordance with the direction of the will. Disbursements to be made for the benefit and comfort of the family of John must withhold such part thereof as would be necessary for the support and comfort of John himself. This would clearly foil the purpose of the testator. The trust here created is in the nature of a spendthrift trust. The testator had a right to ignore the creditors of John, and yet provide that neither he nor his family should be permitted to suffer unduly for lack of the comforts of life. The question here is whether the testator has sufficiently expressed such purpose to avoid the subjection of any part of the trust estate to the mere payment of existing creditors. The objective aimed at by this trust is in no sense contrary to public policy, nor is it held in disfavor by the courts. The right of a testator to thus guard his benefactions was recognized in this court in an early day in *Meek v. Briggs,* 87 Iowa 610. In the cited case, the testator devised a share of his estate to his daughter, but devised the same subject to a trust set forth in another paragraph. By the latter paragraph, such share was placed in the possession and control of trustees, who were to manage such share and to disburse the same solely according to their own judgment and discretion. The judgment-creditor of the beneficiary brought an action against his debtor and against the trustees to impress a lien upon the beneficial interest of the *cestui que trust.* Such action was the substantial equivalent of the present action. We denied the relief. We are unable to see wherein the plaintiff in this case occupies any stronger position than did the plaintiff in that case. In some respects his position is more difficult. In the cited case, the reversion was devised to the daughter in terms, but subject to the trust. In the case before us, there is no devise or bequest in terms to the son John. The devise was to the trustee. The direction to the trustee that any residue of the trust property then in his hands on November 14, 1933, "be delivered to my said son, John, and to his wife, and it is

my wish that they be admonished at that time to carefully conserve the property then intrusted to them for the benefit of their child or children,'' is not inconsistent with the continuation of the trust character of the property in the hands of John and Maude. If it be granted that the language here quoted might be capable of a different construction in other context, yet its actual context invites the construction put upon it by the trial court. This was that the beneficiary in contemplation of the will was not John singly, nor Maude singly, nor John *and* Maude exclusively, but John *and* Maude *and their family*. John could not sever his beneficial interest from the whole. This joinder would continue while the family unit continued, be its survivors many or few. It would be applicable to the family unit even though John did not survive the date of November 14, 1933. The general rule applicable here is set forth in 1 Perry on Trusts and Trustees (6th Ed.), Section 386a, as follows:

''But a trust may be so created that no interest vests in the *cestui que trust;* consequently, such interest cannot be alienated, as where property is given to trustees to be applied in their discretion to the use of a third person, no interest goes to the third person until the trustees have exercised this discretion. So if property is given to trustees to be applied by them to the support of the *cestui que trust* and his family, or to be paid over to the *cestui que trust* for the support of himself and the education and maintenance of his children. In short, if a trust is created for a specific purpose, and is so limited that it is not repugnant to the rule against perpetuities, and is in other respects legal, neither the trustees nor the *cestui que trust* nor his creditors or assignees can divest the property from the appointed purposes. (a) Any conveyance, whether by operation of law or by the act of any of the parties, which disappoints the purposes of the settlor by divesting the property or the income from the purposes named, would be a breach of the trust. Therefore it may be said that the power to create a trust for a specified purpose does, in some sort, impair the power to alienate property.''

The foregoing rule has been followed by us in many cases: *Kiffner v. Kiffner,* 185 Iowa 1064; *Merchants Nat. Bank v. Crist,* 140 Iowa 308; *Robertson v. Schard,* 142 Iowa 500; *Hunter v. Citizens Sav. & Tr. Co.,* 157 Iowa 168.

It is argued by appellant that this construction of the will results in the creation of a perpetuity, void under our statute. There is nothing in the terms of the will that purports to make the will perpetual in that sense. Whenever the purpose of the trust is fully accomplished, it will become subject to termination. If at that time it should be claimed that the *corpus* of the trust property should pass to the estate of John, or of John and Maude, there is no necessary conflict between such an ultimate result and the present continuance of the trust during the life of John and Maude. A good illustration of the operation of the law in that regard may be found in a recent case decided by the Supreme Court of Wisconsin. *Will of Hamburger*, 185 Wis. 270 (201 N. W. 267). In that case a testator devised certain property to trustees, making his widow beneficiary of the income thereof. He also devised to the widow the reversion of the trust property, subject, however, to the trust. It was held that no merger was thereby created, and that, though the widow had power to dispose by will of the reversion, such power was subject to the trust, which withheld from her the power of present disposition, during her life, of the trust property.

In the case at bar, the son John may die before November 14, 1933. The duty of the trustees to deliver the remnant of the property to Maude for the benefit of her children will still remain. Whether, after the termination of the trust, the *corpus* will fall into the estate of John or of Maude, or of both, is a question not necessary to be determined now. Up to this point, the administration of this testamentary trust has proceeded strictly in accord with the directions of the will. No right of the plaintiff's has been violated, and no vested or alienable right of property has yet been conferred upon his debtor.

The judgment of the trial court is affirmed.—*Affirmed*.

STEVENS, VERMILION, and MORLING, JJ., concur.